UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>O. ORTEGA, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 18cv547-LAB-MDD<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 82] |

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth herein, the Court **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**.

## I.　　PROCEDURAL BACKGROUND

Lance Williams ("Plaintiff"), a state prisoner at Richard J. Donovan Correctional Facility ("RJD") proceeding *pro se* and *in forma pauperis*, filed the operative Amended Complaint on December 11, 2019. (ECF No. 39, hereinafter "AC"). Plaintiff alleges that: (1) Defendant Ortega used excessive force against him on March 1, 2018; (2) Defendants Valencia, Bustos, and

Bowman failed to intervene to stop the attack; (3) Defendant Ortega and Correctional Sergeant Lewis threatened and retaliated against him; and (4) Defendant psychiatric technician Kimani was deliberately indifferent to Plaintiff's medical needs when she examined him after the use-of-force incident on March 1, 2018.  (S*ee generally*, *id.*).

## II.   STATEMENT OF FACTS[1]

On March 1, 2018, Plaintiff walked to the Sergeant's office and crossed paths with Officer Ortega ("Defendant Ortega").  (AC at 4).  Defendant Ortega told Plaintiff it was "yard recall" and Plaintiff must return to his cell.  (*Id.*).  Plaintiff told Defendant Ortega that he was going to see the Sergeant about "his court call," and continued walking.  (*Id.*).  The conversation led to an altercation where Defendant Ortega forcibly took a folder out of Plaintiff's hands and pushed Plaintiff into a wall.  (*Id.* at 4-5).  Defendant Ortega punched Plaintiff in his back, kicked his legs and feet, and put his knee into Plaintiff's thigh.  (*Id.* at 5).  Defendant Ortega threatened violence if Plaintiff moved and placed "extremely tight" handcuffs on Plaintiff.  (*Id.*).  Defendant Ortega then "ushered" Plaintiff in an uncomfortable position towards the P.S.U. mental health building.  (*Id.*).  Plaintiff told Defendant Ortega he was going to sue him.  (*Id.*).  Defendant Ortega responded by kicking Plaintiff's feet, causing him to fall, and picked him up by "grabbing the cuffs and outstretching Plaintiff's arms."  (*Id.*).  Once in the P.S.U. mental health building, Defendant Ortega placed Plaintiff in the "cage," where Plaintiff remained for one hour while handcuffed.  (*Id.* at 6).

Plaintiff sustained a "busted bloody nose, cut up bloody wrist[s] from

---

[1] The following facts are taken from Plaintiff's Amended Complaint.  They are not to be construed as findings of fact by the Court.

[the hand]cuffs, [and] body injuries to [his] low back, neck, legs, and his fingers."[2] (*Id.* at 6). Defendant Ortega and Defendants Valencia, Bustos, and Bowman—who watched the entire incident—ignored Plaintiff's request to be seen by a medical technician. (*Id.* at 6).

After Plaintiff was released from the cage, he again requested to be seen by medical. (*Id.* at 8). As he was walking back to his building, he showed numerous inmates his injuries and told Defendant Lewis he wanted to go to medical for his injuries. (*Id.*). Defendant Lewis placed Plaintiff back in the cage and spoke with Defendant Ortega. (*Id.*). Defendant Ortega returned to the cage and told Plaintiff he was writing a "115" Rules Violation Report ("RVR") for "threatening staff." (*Id.*). Plaintiff contends Plaintiff filed the RVR "to cover up his assault on Plaintiff at the direction of [Defendant] Lewis" and in retaliation for threatening to file inmate grievances and civil lawsuits. (*Id.* at 6, 7-8). Plaintiff further contends that Defendant Lewis, Defendant Ortega, and Defendant Valencia agreed to corroborate Defendant Ortega's RVR. (*Id.* at 8-9).

After Plaintiff was released from the cage the second time, Defendant Lewis told him that if "he makes an allegation of assault against [Defendant] Ortega then he would place him in [administrative segregation] and he would be transferred" to a worse prison where he will be injured. (*Id.* at 15). Defendant Lewis stated that if Plaintiff agreed not to file any inmate grievances or lawsuits he will ensure the RVR "will get dismissed." (*Id.*).

Defendant Kimani, a psychiatric technician, assessed Plaintiff's injuries later that day. (*See id.* at 11). Plaintiff showed her his "bruised, cut wrist

---

[2] Plaintiff asserts that his finger was "displaced" and that he later required several Cortisone injections and surgery. (*Id.* at 13).

with fresh, dripping blood and some dried blood all over his wrist," and "a cut on his nose." (*Id.*).  He reported severe pain in his low back, shoulders, legs, forehead, and neck and that he could not move his ring finger. (*Id.*).  He also told her he was "in fear of being assaulted again and that he was hearing voices due to his mental health illnesses." (*Id.*).  Defendant Ortega stood next to Defendant Kimani while she inspected his injuries and commented that "those aren't fresh cuts those are scabs on his wrists." (*Id.*).  Plaintiff states that Defendant Kimani did not contemporaneously write up a "7219 medical evaluation form" as required. (*Id.*).

When Defendant Kimani asked Defendant Ortega what happened, Defendant Ortega told her Plaintiff "disrespected him." (*Id.* at 12).  Defendant Kimani then told Plaintiff "you know not to disrespect the police on the street you get shot." (*Id.*).  She eventually told Plaintiff that the cuts "look bad but they'll heal eventually and you just probably have a bad case of arthritis in your finger." (*Id.* at 14).

Three hours later, Plaintiff asked Defendant Kimani for medical assistance again, but was denied. (*Id.*).  At that time, he received a copy of Defendant Kimani's 7219 medical evaluation form. (*Id.*).  Plaintiff avers that the 7219 medical evaluation form falsely stated that Plaintiff fabricated his injuries, noting that he had scabs on his wrists. (*Id.*).  Additionally, Defendant Kimani did not provide a brief statement explaining how Plaintiff reported receiving his injuries. (*Id.*).  Further, Defendant Kimani did not complete a mental health assessment after Plaintiff complained of hearing voices.

On March 2 and 5 of 2018, Defendant Ortega threatened to seriously injure Plaintiff if he filed any inmate grievances or any lawsuits against him. (*Id.* at 7).  Plaintiff contends that these threats are "of an on-going nature."

(*Id.*).

Plaintiff filed several inmate grievances at RJD from 2017 to 2019, including twenty-five inmate grievances between March of 2018 and July of 2018. (ECF No. 82-1, hereinafter "Le Decl.", Exhibit 1). Plaintiff did not file any inmate grievances relating to the incidents in his Amended Complaint. (*See id.*); (*See also* AC at 16) (explaining that Plaintiff did not exhaust his administrative remedies because he is "under imminent danger of serious physical injury due to the threats made by Defendants and not receiving medical care for his injuries"). Plaintiff filed the original Complaint in this case on March 15, 2018—roughly two weeks after the March 1, 2018 incident. (ECF No. 1).

### III.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). "If reasonable minds could differ," judgment should not be entered in favor of the moving party. *Id.* at 250-51.

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Id.* at 252; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The moving party bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that

demonstrate absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the [nonmovant's] favor, could convince a reasonable jury to find for the [nonmoving party]. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 323; *Liberty Lobby*, 477 U.S. at 249).

### IV.   ANALYSIS

**A. Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Ross v.*

*Blake*, 136 S. Ct. 1850, 1856-60 (2016). Failure to exhaust is an affirmative defense that must be raised and proven by a defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A defendant who seeks summary judgment based on the plaintiff's failure to exhaust administrative remedies must first prove that there was an available administrative remedy and that plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014)). If the defendant does, the burden shifts to the plaintiff to "show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166.

The PLRA only requires prisoners to exhaust those remedies which are "available." *See Booth v. Churner*, 532 U.S. 731, 736 (2001). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino*, 747 F.3d at 1171 (citing *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . –rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

The California Department of Corrections and Rehabilitation's ("CDCR") administrative appeal system for inmates in the California prison system provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material

adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15 § 3084.1(a) (repealed 2020). For appeals submitted after January 28, 2011, inmates must commence the appeals process by submitting a CDCR Form 602 grievance to the facility's appeals coordinator describing "the specific issue under appeal and the relief requested." *Id.* at § 3084(a), (c). Among other requirements, the appeal must be "limited to one issue or related set of issues" and "list all staff member(s) involved and shall describe their involvement in the issue." *Id.* at § 3084.2(a)(1), (3). In order to exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. *Id.* §§ 3084.1(b); 3084.7(d)(3).

Defendants submit evidence showing that Plaintiff submitted multiple inmate grievances during the relevant period, but none of those submissions related to his claims in this case. (Le Decl., Exhibit 1). The undisputed evidence shows that California provides an administrative remedies system for California prisoners to complain about their conditions of confinement, and that Plaintiff used that California inmate-appeal system to complain about other events unrelated to his complaints in this case. As such, Defendants have met their burden to demonstrate that there were available administrative remedies for Plaintiff and that Plaintiff did not properly exhaust those available remedies. *See Albino*, 747 F.3d at 1171.

The burden now shifts to Plaintiff to come forward with evidence showing that something in his case made the existing administrative remedies effectively unavailable to him. S*ee id.* at 1172. Plaintiff acknowledges that he did not exhaust his administrative remedies as to any of his claims in this case, but he argues he could not have done so because he was concerned about the repeated threats to harm him should he file or

pursue his appeals.³ (Oppo. at 2). Plaintiff argues these threats rendered administrative remedies effectively unavailable.

The Ninth Circuit recognizes that a threat of retaliation may be sufficient to render an administrative remedy "effectively unavailable." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). To determine when administrative remedies are unavailable as a result of a threat of retaliation the threat of retaliation must actually deter the plaintiff inmate from lodging a grievance or pursing a particular part of the process and the threat must be one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursing the part of the grievance process that the inmate failed to exhaust. *Id.*

As outlined in the operative complaint, Plaintiff claims Defendants threatened to injure Plaintiff if he filed any CDCR 602 grievances or civil lawsuits against them.⁴ (*See generally*, AC). He argues that his use of the grievance system regarding other incidents are irrelevant because he did not fear harm from those incidents. (Oppo. at 3). Plaintiff explains that "as long as he wasn't filing appeal[s] on [Defendant] Ortega after his actions and

---

³ For this reason, the Court is satisfied that no inmate appeals relating to the incidents in this case exist despite the Court's previous concerns with Defendants' production of inmate grievances to Plaintiff throughout the discovery process. (*See* ECF No. 112). **This Report and Recommendation does not absolve Defendants of their duty to file a declaration with the Court regarding their discovery practices.** (*See id.*).

⁴ Plaintiff requests the Court judicially notice the Amended Complaint. (Oppo. at 2). A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Amended Complaint is already "part of the pleadings for all purposes," and the Court does not need to take further judicial notice of them. Fed. R. Civ. P. 10(c); *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Accordingly, the Court **DENIES AS MOOT** Plaintiff's request to judicially notice the Amended Complaint.

threats, Plaintiff felt [Defendant] Ortega would leave him alone and the civil action" would deter acts of violence or retaliation. (*Id.* at 4). In fact, Plaintiff states that he did prepare an appeal, but was too fearful to file it. (*Id.* at 4, 39-41). The Court assumes for purposes of this motion that these threats were sufficient to meet the subjective test.

Nonetheless, the Court concludes that the objective test has not been met. The undisputed facts reveal that Plaintiff filed several staff complaints from 2017 through 2019 and filed the instant lawsuit within days of the incident in question. (Le Decl., Exhibit 1); (ECF No. 1). For example, Plaintiff recently moved the Court for sanctions against Defendants. (ECF No. 108). In support, he attached CDCR 602 HC forms he filed that allege Defendant Valencia threatened to place Plaintiff in administrative segregation if he filed any inmate grievances. (*Id.* at 25-26, 34-35, 41-42). The fact that Plaintiff filed several appeals during the relevant period alleging staff misconduct, including retaliation, despite threats made by Defendants and filed the instant lawsuit despite threats made by Defendants convinces the Court that the objective test has not been met. *See Jones v. Garcia*, 1:17-cv-01311-LJO-SKO (PC), 2019 U.S. Dist. LEXIS 219958, at *8-10 (E.D. Cal., Dec. 23, 2019); *LeBlanc v. Barbato*, No. CV 16-04329 JLS (AFM), 2019 U.S. Dist. LEXIS 163655, at *19-21 (C.D. Cal., May 29, 2019); *Gaines v. Beasley*, No. 1:15-cv-1533 LJO JLT (PC), 2018 U.S. Dist. LEXIS 181089, at *16-18 (E.D. Cal., Oct. 19, 2018). Thus, plaintiff has not shown that administrative remedies were effectively unavailable to him. Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**.

### B. Deliberate Indifference

Defendants also argue that Defendant Kimani is entitled to judgment

in her favor on Plaintiff's deliberate indifference to medical needs claim. (Mtn. at 8). The Court declines to address this argument considering the Court's recommendation that Defendants' motion for summary judgment be granted for Plaintiff's failure to exhaust administrative remedies.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; and (2) **GRANTING** Defendants' Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **January 19, 2021.** The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **January 26, 2021**. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated: January 4, 2021

Hon. Mitchell D. Dembin
United States Magistrate Judge